**Axel Harald HOLSTENSSON et al.,**
**Plaintiffs-Appellees,**
v.
**V–M CORPORATION, Defendant-**
**Appellant.**
**No. 14812.**

United States Court of Appeals
Sixth Circuit.
Nov. 21, 1963.

John Dienner, Chicago, Ill., Edward C. Grelle, Chicago, Ill., Joseph D. Hartwig, Benton Harbor, Mich., on brief, for appellant.

Donald J. Simpson, Chicago, Ill., Lewis T. Steadman, Chicago, Ill., Robert G. Howlett, Grand Rapids, Mich., on brief, for appellees.

Before MILLER and O'SULLIVAN, Circuit Judges, and WILLIAM E. MILLER, District Judge.

O'SULLIVAN, Circuit Judge.

This appeal involves the validity and charged infringement of United States Patent No. 2,291,158, issued on July 28, 1942, to A. H. Holstensson, as joint inventor with and assignee of, S. P. Arvidius. The claimed invention related to "talking machines for playing a plurality of records in succession." On November 4, 1954, Holstensson filed this action against defendant-appellant, V-M Corporation, a manufacturer of record players, charging its infringement of the claims of said patent. During the pendency of the action, plaintiff Holstensson assigned his rights in the patent to Glenville Industries, Inc., who thereafter prosecuted the action. Defendant denied infringement and for numerous reasons, some of which we discuss hereafter, charged that the patent was invalid. As the case was tried, only Claim No. 1 of the patent in suit was involved. The District Judge held that Claim No. 1 was valid and infringed by defendant. On July 28, 1959, the patent expired so that the relief sought is limited to damages allegedly suffered prior to the patent's expiration.

The patent in suit can be sustained, if at all, only as a patentable combination. Its Claim No. 1 and its specifications de-

scribe old art and previously patented subject matter. Plaintiff, however, asserts that some of the elements of Claim No. 1 are new and that their co-action with whatever is old in the total mechanism endows the claim with validity as a patentable combination. The respective positions of the parties are partially exposed by defendant-appellant's Statement of Question Involved, which reads:

"Does the improvement of one part of an old combination give the right to claim, in a patent, that improvement in combination with other old parts which perform no new function in the combination?"

and by plaintiff-appellee's Counter-Statement, which reads:

"Is the combination of mechanical elements defined by Claim 1 of Patent No. 2,291,158, certain elements of which are new, a patentable combination of elements rather than 'an old combination' of elements?"

In addition to its contention that the involved patent does not disclose a patentable combination, defendant asserts that it is void for overclaiming.

A. H. Holstensson and S. P. Arvidius were both residents and nationals of Sweden. Arvidius was an inventor and Holstensson a manufacturer. About 1934, Arvidius went to work for Holstensson. He invented a record player which, as early as 1934, was exhibited and marketed in Europe. He assigned his rights to such invention to Holstensson who obtained a patent therefor in Sweden on August 18, 1936. The United States rights to this invention, however, were retained by Arvidius. On November 1, 1934, Arvidius applied for a U. S. patent therefor. He obtained an original patent on it in 1936, and a reissue thereof on August 9, 1938, (Reissue No. 20,819). In this opinion, we refer to such patent as the Arvidius patent.

This Arvidius patent described a record player which automatically accomplished the essential functions required for playing in succession and without manual intervention, a series of records.

These functions were stated by the District Judge to be the dropping or placing of a record onto a turntable, the swinging of the arm, carrying the needle, into playing position, the lowering of such arm, called the tone arm, to have the needle enter the grooves of a record, the playing of the record, the raising of the tone arm when the record has been played, the then swinging of it to the side so another record could be dropped onto the turntable and the automatic repetition of these operations until all of the records have been played. For our discussion, we combine and group all of these functions under two titles, viz.: the record dropping mechanism and the cycling mechanism, the latter moving and controlling the cyclic movements of the tone arm.

In the Arvidius patent, the record dropping was accomplished by what was referred to as the "slicer" method. Oppositely disposed on either side of the turntable are two rotatable uprights (posts). On the top of each are two horizontal blades with a common pivot, but separated horizontally a distance equal to the thickness of a record. The records to be played are threaded over a central solid spindle and supported by having the outer edges of the lowermost record rest on the blades of the upright posts. When the tone arm has been swung to the side by the cycling mechanism, the lowermost record is dropped to the turntable by reciprocations of the slicer blades, releasing the lower record, but automatically reacting to restore support to the remaining unplayed records. A complex of gears, cams, pins, pinions, springs, etc., located on a base platform to the side of and below the turntable so cooperated that all functions were performed in cyclic sequence, the activation of the slicers occurring when the tone arm had been swung out of the way of the dropping record. Then began again the cycle wherein the tone arm is swung back to playing position at the edge of a new record, the record is played and the automatic movements continue to the next dropping of a record through the

reciprocations of the slicers. The reciprocations of the slicers result from a "push-pull" movement of a link located beneath the turntable, operating off of the cycling mechanism. This link is connected at its ends to levers attached to the rotatable uprights, and by which they move to reciprocate the slicer blades. Such method of record dropping combined with the cycling mechanism to make up the Arvidius patent. The patent described an entire machine, with Figures 1 to 8, which comprehended both the record dropping and cycling mechanism. The inventor stated:

"This invention relates to automatic gramophones of the kind in which a pile of records is supported centrally above a turntable, the records being dropped one at a time upon the turntable and played in succession.

"The invention has for its object to provide an improved mechanism for effecting the necessary motions of the movable arm carrying the reproducing needle, and for actuating the means carrying the pile of records so as to cause a fresh record to be dropped upon the turntable after playing of each preceding record.

"Further objects of the invention are to provide a mechanism of this character which is reliable in its operation and comparatively simple and inexpensive in its construction and which can be readily applied as an attachment, if desired, to existing gramophones of any conventional type.

"With this and other objects in view, the invention consists in certain novel features of construction, combination and arrangement of parts as will fully appear as the description proceeds, the novel features thereof being pointed out in the appended claims."

The patent in suit, which we call the Holstensson patent, was applied for in 1938 by Holstensson and Arvidius as joint inventors. They described the device sought to be patented as a "Talking Machine for Playing a Plurality of Records." As to Claim 1 of the patent, our review of its language, the accompanying specifications and the evidence received at the trial of this case, persuades us that it discloses the old Arvidius patent except as to the record supporting and dropping mechanism. In place of the old "slicer" method, the new application provided for the records to be supported above and dropped onto the turntable through the use of a central hollow spindle with an offset shoulder thereon in its upper portion and containing a lever so arranged and operated as to push the lowermost record off of the shoulder sideways so that its hole would engage the lower section of the spindle and drop to the turntable. When such displacement was completed, the lever, by spring action, moved back to its previous position, there to remain inactive until, at the proper time within the cycle, it was to drop another record. The lever contained within the hollow spindle extended, within said spindle, from where the latter was provided with the offset shoulder, down through the turntable where its lower end was connected to a link. When activated by, and operating off of, the cycling mechanism located below the turntable, this link, by a "push-pull" movement rocks the lever within the spindle to bring about the dropping of a record. This accomplished, the link and lever remain inactive while the tone arm, controlled by the cycling mechanism, goes through its cycling movements and it is again time to drop a record. Between the respective "push-pull" movements of the links which activate the record dropping both by the slicer and the spindle method, the record players described and patented by the old Arvidius patent and the Holstensson patent in suit bring about the automatic playing of records in the same way and by the same means.

This, then, is the lawsuit before us. A reissue patent granted on August 9, 1938, on an application made on November 1, 1934, describes and claims as its inventions a record dropping mechanism and a cycling mechanism (the Arvidius patent). A second patent, applied for on September 23, 1938, and issued on July 28,

1942, describes and claims as its inventions, a new record dropping mechanism and also the same cycling mechanism covered by the previous patent. The record dropping mechanism of the respective patents cooperate with and are affected by the cycling mechanism in the same way in each patent. In the second patent (Holstensson patent in suit) the cycling mechanism is not identified either in Claim No. 1 or in the specifications as being old or previously patented, nor as part of a combination of old and new art. Two questions arise—first, is the second patent valid in its entirety as a combination patent and, second, is the second patent void in its entirety for overclaiming and as an attempt to claim and extend the monopoly of something already patented?

Claim 1 is the only claim of the Holstensson patent that is involved in this case. It reads:

"In a talking machine, a rotatable hollow shaft, a turntable mounted on said shaft, a post extending through the shaft and having an upper extension which is offset with respect to the post for forming thereon a shoulder for supporting a stack of records threaded on said extension, steadying means adapted to engage the upper side of said stack, said means being movable from said operative position to an inoperative position for permitting records to be threaded upon said extension, a lever pivotally mounted in said supporting post and having one end adapted to engage the edge of the central aperture of the lower-most record in said stack and to laterally displace said record to disengage it from said shoulder, a pickup arm mounted adjacent said turntable, means operative upon completion of the playing of a record for swinging said pickup arm outwards, said means also rocking said lever into position disengaging said lower-most record whereby the latter drops onto said turntable, and means

for then returning the pickup arm inwards to playing position."

Claims 2 to 14 of the patent in suit have to do with mechanisms for the playing of various sized records and are not directly involved in this lawsuit. The claims and specifications of the old Arvidius patent did not comprehend a method or mechanism for automatic playing of records of different sizes, being limited to the then conventional ten inch records. Claims 2 to 14 of the patent in suit provide a way of playing larger records, as well as the smaller ones. When a large record is displaced laterally by the rocking of the spindle lever, because of its size, it strikes a lever within a housing at the side of the turntable. When this latter lever is so activated by a large record, by a connection with the cycling mechanism, it so affects the movements thereof that the tone arm is caused to lower to the turntable at a point needed for playing the larger record. The defendant's machines are not charged with infringing these claims.

We here assume the patentability of the invention claimed by Arvidius in his original patent for a record player. His specifications and claims covered an entire machine, including the complex mechanism for lowering the needle-carrying tone arm onto the record, the playing of the record, the lifting and swinging of such arm out of the way when the record was played, the holding of such tone arm in an inoperative position for the time required for the employment of the "slicer" method of dropping the next record onto the turnable and then the repetition of the cycle.

The basic power for the operation of both the Arvidius and the Holstensson record players is provided by an electric motor which starts and continues the rotations of the turntable. In both machines, the cycling mechanism is set and continued in motion by the rotations of a small friction wheel which, at or near the end of the playing of a record, makes contact with the moving turntable, either on the side thereof or on a ridge on its underside. The rota-

tions of this friction wheel start and complete the movements of the gears, cams, pins, levers, etc., which make up the cycling mechanism common to both machines.

A record player made pursuant to the original Arvidius invention was marketed in Europe under the trade name of "Luxor." There is no evidence that a record player embodying the U. S. Arvidius patent was ever marketed or made in the United States by Arvidius, or by anyone else acting as his assignee or licensee. While the application for a reissue patent on this Arvidius machine was still pending in the United States, Arvidius, with Holstensson, went to work to create a record player which would, in addition to what the old Luxor machine provided, contain means for automatic playing of records of different sizes. Such was not possible in the Arvidius (Luxor) machine. Out of this study came an application in Sweden for a patent. The initial application, filed in Sweden on September 23, 1937, disclosed that Holstensson and Arvidius, as inventors, had assigned their rights thereto to Holstensson's wife. In its specifications and drawing, this application described an entire machine, including a cycling mechanism substantially the same as that described in the Arvidius patent but specifying a new method for holding the records and dropping them on the turntable and providing for the playing of records of various sizes. This application contained some 16 drawings, Fig. 1–16. Following the filing on September 23, 1937, of such application which covered an entire machine, a further application was made on November 26, 1937, by Arvidius, alone, limiting its claims, specifications and drawings (Fig. 1–5, only) to the new spindle type record dropper and record supporting device. Its Figures 1–5 were identical with like numbered drawings in the first application covering an entire machine. The second application disclosed that, as inventor, Arvidius had assigned his rights thereto to Holstensson's wife. The second application, limited to the record

dropping mechanism, was made at the direction of the Patent Examiner in Sweden. On August 17, 1939, Swedish Patent No. 97,122, covering the entire machine, and Swedish Patent No. 97,123, limited to the spindle record dropper device, were issued, No. 97,122 to Holstensson and No. 97,123 to Holstensson's wife.

On September 23, 1938, Holstensson and Arvidius, as joint inventors, applied for the United States patent in suit, which was issued to Holstensson July 28th, 1942, as United States Patent No. 2,291,158. All rights to the invention claimed had been, as they were in Sweden, assigned by Arvidius to Holstensson. This application described an entire machine in substantially the same language and with the identical drawings, Fig. 1–16, as in Swedish Patent No. 97,-122. It is agreed that the United States patent in suit is legally identical with the Swedish Patent No. 97,122. In their preliminary statement, the inventors said, in part:

"The present invention relates to talking machines for playing a plurality of records in succession and more particularly to the type of such talking machines in which a stack of records to be played is supported above the turntable and a mechanism is provided which upon completion of the playing of a record automatically raises the arm carrying the sound box or pickup from said record, swings the same outwards, brings the next record in the stack to fall downwards to the turntable and moves said arm back to a position for playing the new record.

"The chief object of the present invention is to provide an improved talking machine of this general type which permits records of different sizes to be played automatically, i. e., in which the stack of records supported above the turntable may contain records of different diameters indiscriminately mixed."

While the above does not emphasize, as within the chief objectives of the

patent, the use of the spindle type record changer, the specifications completely describe it, as well as the cycling mechanism, and the means for steadying the stack of records. We consider it unnecessary to discuss this steadying device, which may or may not have any inventive quality. Nowhere in the specifications or in Claim No. 1 is there a suggestion that the cycling mechanism was old or that it had been disclosed in the previous Arvidius patent.

From our examination of the models of machines constructed to portray the Holstensson patent in suit and the Arvidius patent, from the testimony of plaintiffs' expert witness, one Fishleigh, and from consideration of the entire record, we are persuaded that the cycling mechanism of the Holstensson and Arvidius patents are the same. Plaintiffs introduced as their Exhibit K a record playing machine constructed in accordance with the patent in suit. By demonstration, it was shown that with the spindle type record dropper and the record steadying means of the patent in suit removed, the cycling mechanism went through all of its various movements. Such demonstration was followed by this cross-examination of plaintiffs' expert, Fishleigh.

"Q. This machine (Ex. K) just performed the operation of automatically lifting the tone arm when the tone arm had arrived at a certain portion at the inner end of the playing groove, and it automatically moved out beyond the edge of the table (turntable) and then paused, and then moved in to the table (turntable) in register with the outer edge of the record, and then lowered the tone arm needle down onto the record automatically, isn't that correct?

"A. That is correct.

"Q. Showing that that mechanism is not dependent upon the presence of any mechanical record supporting and dropping means?

"A. You mean so that that mechanism does not stop if we dis-

connect the record dropping means? That certainly is correct.

"Q. Mr. Dienner: Read my question. I would like to have an answer to the question directly.

(question read)

"Q. Yes?

"A. Oh, I think that is correct.

\* \* \* \* \*

"Q. Mr. Fishleigh, we have just operated the machine Defendant's Exhibit K, without the step spindle to show that the mechanism will, upon the end of the playing of the record, when the tone arm arrives at a definite position, cause the mechanism to lift the tone arm needle from the record, move the tone arm out beyond the edge of the record, pause, and return and drop the needle onto the edge of the record for the playing of that record that is on the turntable, that is correct, isn't it?

"A. It did so operate, yes, sir.

"Q. Now, the Arvidius reissue patent (Arvidius) has elements which correspond to the elements of Exhibit K if we disregard the record supporting and dropping means, isn't that correct?

"A. I think in general, generally so, yes.

\* \* \* \* \*

"Q. Returning to the patent in suit, the last elements of Claim 1 is 'and means for then returning the pickup arm inwards to playing position.' We have not discussed that specifically, but that refers to the moon-shaped cam, does it not, in the Holstensson patent designated by the reference numeral 69?

"A. That is a part of that. The moon-shaped cam is part of that element, yes, sir.

"Q. And in the Arvidius reissue patent there is a similar moon-shaped cam 30–31 which performs the same functions of returning the tone arm inwards?

"A. Well, there is a somewhat similar and different detailed cam, part

of which does function too long with other elements to return the pickup arm inwards, that is correct.

"Q. And after the initiating mechanism starts the cam wheel into operation in the Holstensson patent, the cam wheel is 66 in Holstensson patent, is it not?

"A. Yes.

"Q. And there is a similar cam wheel? I believe it is 48–27 in the Arvidius reissue patent.

"A. Well, I think that is true. I believe that the comparison would be closer between 66 in the Holstensson patent in suit, if my memory serves me right, and 48 in the reissue patent, but they both have gear members to which the cams are attached.

"Q. The cam for raising and lowering the tone arm through the operation of the pin 56 in Holstensson is found in the Arvidius as a similar cam in the gear wheel 27 for raising and lowering the tone arm in the Arvidius structure through the pin 25, isn't that correct?

"A. That is correct.

"Q. And the surrounding sleeve around that pin 25 in Arvidius reissue corresponds to the surrounding sleeve 55 in Figure 7 of the Holstensson, et al, patent in suit?

"A. It is quite similar in its operation, yes.

"Q. And the half-moon cam 31–32 of Arvidius cooperates with the pin 32 in Arvidius as the cam—half-moon cam 69 operates with the pin 70 in Holstensson?

"A. In part, yes, sir.

"Q. So that the tone arm is moved first out by contacting the right hand or upper portion 31 in Arvidius by the pin 32, is that correct?

"A. Yes.

"Q. And likewise contacting the right hand or upper arm of the half-moon cam by the pin 70 in the patent in suit?

"A. That is correct.

"Q. And the return of the tone arm in the Arvidius is performed by the pin 32 engaging the arm 30 of the moonshaped cam, and in Holstensson the return of the tone arm is performed by the engagement of the pin 70 with the left hand or lower limb of the moon-shaped cam, is it not?

"A. That is correct.

"Q. So that we find complete correspondence in the operating cams and pins in these two patents, do we not?

"A. No, sir. To the extent that you have defined it so far, speaking generally that is true, but I could not agree that there is complete correspondence because there is considerably more in Holstensson that we have not discussed.

"Q. But not in the parts that we have discussed, is there, just now?

"The Court: The witness has said as to the parts which you have discussed he agrees there is correspondence, is that right?

"The witness: That is correct, sir.

\* \* \* \* \*

"Q. Certainly in respect to Arvidius 20,819 which is shown in these drawings, Defendant's Exhibits 1, 2, 3 and 4, there is that means operative upon completion of the playing of a record for swinging said pickup arm outwards?

"A. I think that is correct.

"Q. And there is then a disclosure of the patent in suit of the corresponding means?

"A. I think that is correct; there is a means differing in some detail, yes.

"Q. And what detail, what difference is there between the two?

"A. Well, primarily in the detail of the cam mechanism. Broadly speaking, I think they are the same, but in detail they are not exactly identical.

"Q. Well, there is no doubt about the fact that there is such means present in the patent in suit.

"A. Not in my mind, no, sir."

After some examination of this witness as to the detail of the cycling mechanism disclosed in the Holstensson patent in suit and in the Arvidius patent, such examination continued:

"Q. So that we find complete correspondence in the operating cams and pins in these two patents, do we not?

"A. No, sir. To the extent that you have defined it so far, speaking generally that is true, but I could not agree that there is complete correspondence because there is considerably more in Holstensson that we have not discussed.

"Q. But not in the parts that we have discussed, is there, just now?

"The Court: The witness has said as to the parts which you have discussed he agrees there is correspondence, is that right?

"The witness: That is correct, sir.

"The Court: All right.

"The witness: The operation as far as you have gone.

"The Court: The next question was whether there was complete correspondence between the two units and he disagreed with that, is that right, sir?

"The witness: That is my position, yes.

"Q. By Mr. Dienner: And the disagreement is based on what?

"A. Well, the fact that there are two parts to the operation of returning the tone arm to the initial position in the Holstensson and the action of the pin 70 which we do not have in pivoting about, well, the arm 71 pivoting about a pivot point at the back end under certain conditions of cycling.

"The Court: Are you now referring to the Holstensson patent?

"The witness: That is correct.

"Q. Mr. Dienner: Are those differences involved in the statement of Claim 1 of the patent in suit?

"A. I don't think so, no."

Continuing on, we believe that plaintiffs' expert effectually conceded the identity of the operations of the cycling mechanism in the Holstensson and Arvidius patents down to the time when, at the final step of the cycle, a link beneath the turntable, in each patent, makes its move to activate the record dropping mechanism. This examination concluded the subject:

"Q. And the operation of a record dropping means through a link is performed in Arvidius by the engagement of the dotted pin 53 in Fig. 5 against the link 11 which we mentioned earlier in our examination?

"A. That is correct.

"Q. And the operation of a link 91 in the Holstensson patent in suit is produced by pin 98 riding off the shoulder 101 in Fig. 10, is it not?

"A. I think that is correct.

"Q. So those two structures correspond in structure and mode of operation and result, do they not?

"A. I don't think I could even begin to go along with you on that one, sir.

"Q. They move a link back and forth in proper time, do they not?

"A. That is correct."

Defendant's expert witness Faulkner was, as might be expected, more firm in his assertion that the cycling mechanism of Holstensson and Arvidius were substantially the same. He gave support to this assertion by taking a model of the old Luxor machine built on the Arvidius patent but with the old slicer record dropping mechanism removed; to the link which had activated the rotatable posts and the slicers, he attached, in place thereof, the spindle type record dropper of the Holstensson patent in suit. This reconstructed machine then operated the same as the machine built on the patent in suit. In our view, this demonstration supported

defendant's claim that the cycling mechanisms of Holstensson and Arvidius were the same, and that the new spindle mechanism in no way changed the function or operation of the cycling mechanism and that the latter, as contained in the patent in suit, made no different contribution of function to record dropping than it had in the old Arvidius machine.

The inventor, or inventors, of the patent in suit provided further evidence that the spindle type record dropper was a separate invention, independent of the cycling mechanism, by applying for and obtaining separate Swedish Patent No. 97,123, limited to the spindle type record dropper and supporting device. As to the cycling mechanism of the tone arm and its activation of the record dropper, the inventor in 97,123 said:

"The movements of the tone arm, as well as the record changing operation, are controlled by a cam mechanism *not illustrated,* mounted on the underside of the base plate below the tone arm and preferably arranged to be operated from the turntable 3 through a friction roller 58 protruding upwards through a hole 57 of the base plate, although of course, other operating methods are conceivable too."

The claims of this Swedish patent, 97,123, did not attempt to claim the cycling mechanism as any part of the invention, independently of, or in combination with, the spindle type record dropper and record supporting means. Conversely, the Holstensson patent in suit in its Claim No. 1 and its specifications and the Swedish patent No. 97,122 describe and claim as invention the cycling mechanism as well as the new spindle.

From all of the foregoing, we are persuaded first that the cycling mechanism of the patent in suit was previously disclosed in the Arvidius patent and, second, that the cycling mechanism redescribed and claimed as invention in Claim 1 of the patent in suit, performs no new function when combined with the spindle type record dropper. The District Judge found invention in the spindle type record dropper. Appellant does not here contest the presence of invention in the spindle device, nor the charge of infringement.[1] We need not, therefore, consider such matter.

■ The District Judge made no finding of fact or law as to whether the cycling mechanism of the Holstensson patent in suit was the same as, or had been disclosed in, the earlier Arvidius patent. He apparently did not consider such a finding necessary for decision. He said:

"[T]he fundamental mechanical means used below the turntable for the activation of the tone arm and of the turntable, and for the placing of the record *are of no consequence to the determination of this lawsuit.* The basic problem is whether the center hollow spindle of the defendant's device, following the teaching of the Miller patent, is an infringement upon the plaintiffs' patent in suit." (Emphasis supplied)

Throughout the trial of this case and in this Court, plaintiffs' position has been that their patent combines new invention with *old elements.* No clear expression, however, is made as to what are these *old elements* referred to. We think it fair to conclude that the cycling mechanism of the old Arvidius patent comprises, or is at least one of the *old elements.* The District Judge's opinion says,

1. The use of a spindle with an offset shoulder to support a stack of records and a method for laterally displacing them so that the central aperture would engage the lower section of such spindle and drop to the turntable were not new and had been disclosed in the prior art. None however employed the hollow spindle enclosing a lever which was activated from beneath the turntable. The District Judge found that the advance of the Holstensson spindle over the prior art would not have been obvious to one skilled in the art. That finding is not contested on this appeal.

"[W]e should say that we have examined the combination patent in suit * * * and are satisfied that the combination patented by Holstensson is a combination of *old elements* with *a new element* whereby *a new result is obtained* * * *." (Emphasis supplied)

We are of the opinion that from the evidence no other conclusion could be drawn but that the cycling mechanism claimed as invention in, and described in, the patent in suit was the same as that disclosed by the Arvidius patent. Any finding of fact to the contrary would, in our opinion, be clearly erroneous.

Although the Holstensson patent in suit was issued in 1942, neither the patentee nor any assignee thereof or licensee thereunder, prior to 1950, used the same in any marketed record playing machine. In 1950 defendant V-M Corporation began to market a machine with a spindle type record dropper conforming to a Miller patent therefor issued on September 19, 1950, on an application made in 1940. The Miller patent was limited in its claim of invention to a spindle type record changer. After defendant, in 1950, made the first use of a spindle type record dropper in a marketed machine, record players using the spindle type of record changer have enjoyed the largest commercial success. Another company, Webcor, Inc., began using a spindle type record dropper and upon suit by Holstensson, was found guilty of infringing the Holstensson patent in suit. In such suit, District Judge Perry held that the patent in suit was valid. Holstensson v. Webcor, Inc., 150 F.Supp. 441 (N.D.Ill.1957). This suit was filed on November 8, 1954, and the instant suit was filed November 4, 1954. In 1954, and subsequent years, various manufacturers took from Holstensson or Glenville Industries licenses to use the Holstensson patent in suit. At the time of trial in 1959, defendant V-M Corporation was the only American manufacturer using the accused type of spindle without license from Holstensson or Glenville Industries.

In the District Court, defendant challenged the validity of the patent in suit on the grounds that the spindle type record dropper did not contain invention, that it had been disclosed in the prior art, and that whatever advance or improvement was made in the spindle record dropper over the prior art was such as would have been obvious to one skilled in the art. The District Judge found against these contentions and defendant does not here assert error in such findings. Defendant also claimed in the District Court, as it does here, that the product of Holstensson's putting together the new spindle type record dropper with the cycling mechanism already disclosed in the Arvidius patent did not constitute a patentable combination. Defendant asserts that the old Arvidius cycling mechanism performs no new function in the claimed combination and contributes nothing new to the operation of the record dropping mechanism. Defendant further asserts, as he did in the District Court, that the patent in suit is void for overclaiming—that Holstensson attempted by the means employed, and as assignee of Arvidius, to obtain and extend the monopoly of the cycling mechanism disclosed in the old Arvidius patent. We are persuaded that the Holstensson patent in suit cannot be sustained as a combination and we are of the opinion that it is void for overclaiming.

A reading of the testimony of A. H. Holstensson, given through an interpreter, leaves the impression that he really was not *jointly* an inventor with Arvidius, although described as such in the joint application for the patent in suit.[2] We need not, and do not, however,

2. Arvidius was the sole inventor of the old Luxor machine with a cycling mechanism the same as the patent in suit. He was also named as sole inventor in the Swedish Patent No. 97,123, limited to the spindle type record dropper. Holstensson testified to working with Arvidius in the development of the latter, but said he gave Arvidius "the honor" of such invention.

make any finding in this regard. It appears, also, that Arvidius provided most, if not all, of the inventive genius that produced whatever patentability resides in the several devices controlled by Holstensson. In each instance but one, Arvidius had assigned the rights to his invention either to Holstensson or to Holstensson's wife when applications for patents on such inventions were made. The one exception involved the United States patent rights to Arvidius' original invention. Arvidius chose to retain the American rights to this and obtained the Arvidius reissue patent which covered the cycling mechanism and his slicer method of record dropping. The evidence discloses that after joining Holstensson in the application for the United States patent in suit in September, 1938, and presumably after assigning his rights therein to Holstensson, some time about the year 1939, Arvidius was discharged from his employment with the Holstensson enterprises. He was then, and thereafter, the sole owner of the United States patent for the cycling mechanism disclosed in Arvidius reissue patent. The record in the case gives no history of Arvidius after being discharged by Holstensson's enterprise other than that he was dead at the time of trial. Decision of this case involves the subjects of patentable combinations and invalidity of a patent for overclaiming. Much has been written on the first point, less on the second. We find diffculty in separate discussion of them in the context of the case at bar.

### 1. *Patentable Combination*

■ No statutes or decided cases give us a definition of patentable combination which will provide easy discernment of its presence or absence in the limitless varieties of putting together the old with the old and the old with the new. In Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 150, 71 S.Ct. 127, 129, 95 L.Ed. 162, 166, the Supreme Court emphasizes that it had never ventured to give "a precise and comprehensive definition of the test to be applied in such cases." In the case at bar, one of the elements, the spindle type record dropper was new and constituted invention. This invention was combined with another element, the cycling mechanism, which was old and disclosed in the Arvidius patent. We, therefore, deal with a combination which brings together the new and the old.. Such combinations have been held patentable as such, Williams Mfg. Co. v. United Shoe Mach. Corp., 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537; Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805. But to be so it is necessary that the old contribute something more than mere presence, to the functioning, the utility and the novelty claimed to provide patentability for the total combination. Lincoln Eng'r Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008, 1010; DeBurgh v. Kindel Furniture Co., D.C., 125 F.Supp. 468, 476, affirmed, DeBurgh v. Kindel Furniture Co., 229 F.2d 740 (C.A. 6, 1956), 1 Walker, Patents, § 41 (Deller ed. 1937). We feel that what was sought to be done with the new spindle type record dropper here was not unlike the Supreme Court's characterization of the inventor's conduct in Lincoln Engineering—"having hit upon this improvement he did not patent it as such but attempted to claim it in combination with other old elements which performed no new function in his claimed combination." (303 U.S. 549, 58 S.Ct. 664, 82 L.Ed. 1010).

■ We think that from the concessions of plaintiffs' expert, from our own examination of the patent in suit, and from the fact that the inventors in obtaining Swedish Patent No. 97,123, recognized that their invention over the old Arvidius device resided only in the spindle device, it is fair to say that the old Arvidius cycling mechanism, claimed again in Claim No. 1 of the patent in suit, contributed no more to the operation of the claimed combination than the electric motor which provided the power for rotating the turntable. We recognize that the cycling mechanism, insofar as it cooperates with the method for playing

records of different sizes, may with new attachments not shown in the old Arvidius mechanism, do so, but Claim 1 here involved has nothing to do with a method for playing different size records. The claims are the measure of invention. Smith v. Snow, 294 U.S. 1, 11, 55 S.Ct. 279, 79 L.Ed. 721, 728; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 418, 28 S.Ct. 748, 52 L.Ed. 1122, 1128; Patrol Valve Co. v. Robertshaw-Fulton Controls Co., 210 F.2d 146, 152.

■ We hold that Claim 1 does not disclose a patentable combination.

### 2. *Is Claim 1 void for overclaiming?*

We think a fair review of the language of Claim No. 1, set out above, discloses the inventor's intention to claim the cycling mechanism as part of the invention, combination or otherwise. While the spindle type record dropper is described with more particularity than the cycling mechanism, and the cycling movements of the tone arm are, in part, referred to as means, the specifications illustrated with drawings (Figs. 1–16) cover the entire operation. Plaintiffs' expert testified that Claim No. 1 describes a machine which includes the cycling mechanism. Plaintiffs' complaint did not limit its charge of infringement to use by defendant of the spindle type record dropper. Plaintiffs' proofs were directed at showing that the cycling mechanism used in defendant's models infringed on the cycling mechanism as well as the spindle. Nowhere in the entire patent, including its specifications and drawings, is there any disclosure that the described cycling mechanism was old and previously disclosed in prior patent, and Claim No. 1 does not purport to be a combination of something new with old prior art.[3] At the beginning of the trial, it was stated by plaintiffs' counsel that "* * Claim No. 1 of the patent that is here in suit is directed to the broad basic combination." A member of the public, reading Claim No. 1 and all the specifications, would not be informed that the cycling mechanism was other than an original invention. That plaintiffs' position was to claim this cycling mechanism as invention in the patent in suit is made clear by one of their main exhibits entitled "Chart Showing Wherein Mechanical Elements of Claim 1 of Holstensson, et al, Patent No. 2,219,158 are Found in Defendant's Structure." The drawings depict figures of the patent in suit and similarly functioning elements of defendant's accused device. By this exhibit, it was claimed that among the "Mechanical Elements" of the patent in suit were "a pickup arm mounted adjacent said turntable," "means operative upon completion of the playing of a record for swinging said pickup arm outwards," and "means (after a record is dropped) for then returning the pickup arm inwards to playing position." While not complete in detailed description, this exhibit purports to show not only wherein the accused device has appropriated the spindle type record dropper, but also the method of carrying out the cyclic movements of the tone arm.

■ Plaintiffs rely in part upon the rule that a presumption of a patent's validity arises from its issuance. 35 U.S.C.A. § 282; Radio Corporation of America v. Radio Eng'r Labs, Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163, and cases cited therein. This presumption is weakened if there is applicable prior art not considered by the patent office. Aluminum Company of America v. Sperry Products Inc., 285 F.2d 911, 916 (C.A. 6, 1960); France Mfg. Co. v. Jefferson Elec. Co., 106 F.2d 605 (C.A.

---

3. At one point in the specifications, it is stated that "upon completion of the playing the cam mechanism is put into action by means of a device which is *not shown in the drawings.* * * * " This is followed by a statement that "This mechanism which is known per se forms no part of the present invention." While we find obscurity in this statement, it is clear that the mechanism referred to is not the cycling mechanism of the old Arvidius patent because the latter is fully described and illustrated and what is conceded to be previous invention is not shown.

6, 1939); Wolverine Fabricating & Mfg. Co., Inc. v. Detroit Gasket & Mfg. Co., 148 F.2d 399 (C.A. 6, 1945); Modern Products Supply Co. v. Drachenbert, 152 F.2d 203 (C.A. 6, 1945); Cold Metal Process Co. v. Republic Steel Corp., 233 F.2d 828 (C.A. 6, 1956); Gibson-Stewart Co., Inc. v. Wm. Bros. Boiler & Manufacturing Company, 264 F.2d 776 (C.A. 6, 1959); Murray Company of Texas, Inc. v. Continental Gin Co., 264 F.2d 65 (C.A. 5, 1959). The Arvidius patent (Arvidius Reissue No. 20,819) was not cited and apparently not considered by the patent examiner. Plaintiffs argue that the prior art which was considered by the patent office (patents relating primarily to spindle type record droppers) was more pertinent than the Arvidius patent. This would be true if the claim of the applicants for the patent in suit was directed only at the spindle type record dropper. If, as is this case, the cycling mechanism was part of the invention claimed, then, indeed, Arvidius Reissue No. 20,819 was pertinent prior art. No reason is given as to why it was not cited in the patent office.

■■ We come, finally, to the critical question for our decision, namely, will the owner of a patent which, in part, contains patentable invention, be denied recovery from one who clearly infringes the part of the patent which is invention, merely because the patent is not a true combination and claims as part of the invention that which is old and disclosed in a prior patent? We are of the opinion that we must answer in the affirmative. Such a holding appears unfair unless there is a policy of patent law which, in its effect, visits total forfeiture upon a patent which attempts to extend its monopoly to something already patented. There is such a policy.

The modern cases most cited for this proposition are Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251, and Lincoln Eng'r Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008. In Bassick the Supreme Court, speaking of claiming the old with the new, not in true combination, said:

"The question then is whether, by this method, the patentee, by improving one element of an old combination whose construction and operation is otherwise unchanged, may, in effect, repatent the old combination by reclaiming it with the improved element substituted for the old element. *That this cannot be done is shown by numerous cases in this and other federal courts.*" (Emphasis added) (298 U.S. 425, 56 S.Ct. 791, 80 L.Ed. 1256)

In Lincoln Engineering, the Supreme Court said:

"As we said of Gullborg in the Rogers case, having hit upon this improvement he did not patent it as such but attempted to claim it in combination with other old elements which performed no new function in his claimed combination. *The patent is therefore void as claiming more than the applicant invented.* * * * And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination." (Emphasis added) (303 U.S. 549, 58 S.Ct. 664, 82 L.Ed. 1010).

While the quoted passages from Bassick and Lincoln Engineering are broad in their support of a policy of declaring void a patent for overclaiming, they must be read in their factual context. Each of these cases involved contributory infringement. There, the accused devices were not charged with infringing new elements in claimed combination patents, but with manufacturing components, old in the art, which were to be sold for use with new elements in the patentees' claimed combinations. Such is not the case before us where defendant is found to infringe the new element of the patent in suit. The principle of those cases is however, applicable.

In Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 71

S.Ct. 127, 95 L.Ed. 162, the Supreme Court was considering the patentability of a combination for a cashier's counter in a supermarket. The components were an elongated L shaped counter, a three sided open end rack for pulling groceries up to the cashier, and guides on the counter to control the rack. The Court held the combination was not patentable, but considering that the extension of the counter might be a patentable improvement, said:

> " * * * if the extension itself were conceded to be a patentable improvement of the counter, and the claims were construed to include it, the patent would nevertheless be invalid for overclaiming the invention by including old elements, unless, together with its other old elements, the extension made up a new combination patentable as such." (340 U.S. 150, 71 S.Ct. 129, 95 L.Ed. 165)

Without citing or attempting review of the many cases which have dealt generally with the subject of overclaiming, we come to Evans v. Eaton, 7 Wheat. 356, 20 U.S. 356, 5 L.Ed. 472 (1822). Unless changes in statutory language or the holdings of later decisions impair this case's standing as announcing a rule of law, we consider that it impels us to hold the Holstensson patent in suit void. The patent there involved related to a so-called "Hopper Boy," a machine involving "the art of manufacturing flour and meal." Evans invented an improvement to the "Hopper Boy," a mechanism known in such art. Two decisions, the one above cited and Evans v. Eaton, 3 Wheat. 454, 16 U.S. 454, 4 L.Ed. 433, discuss at length the factual background of the case as well as the statutes then in force. Understanding of the import of this decision can be adequately gained, however, from the court's recitation of the question involved. The plaintiff's action for infringement had been tried to a jury and, after reading the trial court's charge, Mr. Justice Story stated:

> "The plaintiff, with a view to the maintenance of his suit, contended that his patent, so far as respected the hopper-boy, had a double aspect. 1. That it was to be as a patent for the whole of the improved hopper-boy; that is, of the whole machine as his own invention. 2. That if not susceptible of this construction, it was for an improvement upon the hopper-boy, and he was entitled to recover against the defendant for using his improvement. The defendant admitted that he used the improved hopper-boy, and put his defense upon two grounds: 1. That if the patent was for the whole machine, i. e., the improved hopper-boy, the plaintiff was not the inventor of the improved hopper-boy so patented. 2. That if the patent was for an improvement only upon the hopper-boy, the specification did not describe the nature and extent of the improvement; and if it did, still the patent comprehended the whole machine, and was broader than the invention." (7 Wheat. 427, 428, 20 U.S. 427, 428, 5 L.Ed. 490)

The legal question thus exposed, and after reviewing the requirements of the then controlling patent law, the Court said:

> "From this enumeration of the provisions of the act, it is clear that the party cannot entitle himself to a patent for more than his own invention; and if his patent includes things before known, or before in use, as his invention, he is not entitled to recover, for his patent is broader than his invention. If, therefore, the patent be for the whole of a machine, the party can maintain a title to it only by establishing that it is substantially new in its structure and mode of operation. If the same combination existed before in machines of the same nature, up to a certain point, and the party's invention consists in adding some new machinery, or some improved mode of operation to the old, the patent should be limited to such improvement, for if it includes the whole machinery, it includes more

than his invention and therefore cannot be supported. This is the view of the law on this point which was taken by the Circuit Court." (7 Wheat. 430, 431, 20 U.S. 430, 431, 5 L.Ed. 491)

In stating what he claimed was his invention, the patentee had said:

"I claim as my invention, the peculiar properties or principles which this machine possesses in the spreading, turning and gathering the meal at one operation and the raising and lowering of its arms by its motion, to accommodate itself to any quantity of meal it has to operate upon." (7 Wheat. 428, 20 U.S. 428. 5 L.Ed. 490)

Of this manner of stating the patentee's claim, Mr. Justice Story said:

"From this manner of stating his invention, without any other qualification, it is apparent that it is just such a claim as would be made use of by the plaintiff, if the whole machine was substantially in its structure and combinations new. The plaintiff does not state it to be a specific improvement upon an existing machine, confining his claim to that improvement, but as an invention substantially original. In short, he claims the machine as substantially new in its properties and principles, that is to say, in the modus operandi." (7 Wheat. 428, 20 U.S. 428, 5 L.Ed. 490)

The Court in holding the patent there involved to be invalid, relied upon the patent law then in force which required the applicant for a patent to describe it "in such full, clear and distinct terms, as to distinguish the same from all other things before known." [4] Applying such requirement, the Court said, "[h]ow can that be a sufficient specification of an improvement in a machine, which does not distinguish what the improvement is, nor state in what it consists, nor how far the invention extends? Which describes the machine fully and accurately, as a whole, mixing up the new and old, but does not, in the slightest degree, explain, what is the nature or limit of the improvement which the party claims as his own?" The decision of the case was affirmance of a Circuit Court judgment, through approval of the trial judge's instructions which announced the rule of law discussed by the Supreme Court and approved by it.

■ While not citing Evans v. Eaton, its rule is followed in other cases which emphasize the requirement that an applicant for an improvement or combination must particularize as to what is old and what is new. Merrill v. Yeomans, 94 U.S. 568, 24 L.Ed. 235; Brooks v. Fiske, 14 How. 212, 214, 56 U.S. 212, 214, 14 L.Ed. 665, 667. In Patrol Valve Co. v. Robertshaw-Fulton Controls Co., supra, Judge McAllister, speaking for this Court, said:

"[W]e are of the opinion that the claims of the patent in suit are invalid for the reason that the patentees do not particularly point out and distinctly claim the part, improvement, or combination which they claim as their invention or discovery, as required by the controlling statute, R.S. § 4888, 35 U.S.C.A. § 33." (210 F.2d 150, C.A. 6, 1954).[5]

---

4. The language of the Act in force at the time of the issuance of the patent in suit was not identical with that quoted in the Evans opinion. We consider, however, that the Act in force when the Holstensson patent in suit was applied for was of like import. § 33 of Title 35 U.S.C. (repealed in 1953) required that the applicant for a patent so describe his invention "so as to distinguish it from other inventions; and he shall particularly, point out and distinctly claim the part, the improvement, or combination which he claims as his invention or discovery."

5. § 1.71 of the current Rules of Practice of the U. S. Patent Office emphasize [t]he necessity of clear identification of the old and the new in providing that "[t]he specification must set forth the precise invention * * * in such manner as to distinguish it from other inventions and from what is old." (37 C.F.R. § 1.71(b)).

In Williams Mfg. Co. v. United Shoe Mach. Corp., 121 F.2d 273, 279 (C.A. 6, 1941), we said, in holding one of the involved patents invalid, "[W]hatever improvement may result is due entirely to the improved element *and cannot give rise* to valid claims embracing the entire lasting mechanism." (Emphasis supplied.)

It might appear unfair to deny an inventor the fruits of his invention merely because he overclaimed its breadth in his patent application and unjust to allow a third party to appropriate and infringe a true invention because of the failure of a patentee to comply with the patent statute. This might be arguable unless we look upon Evans v. Eaton as announcing a policy which, correctly applied, may visit forfeiture of a patent even though it, in part, discloses true invention. That such is the thrust of the majority opinion in Evans is exposed by its dissenting opinion which decries the severity of the rule of the majority opinion. The dissenter observes:

"To declare a patent for a highly useful improvement absolutely void, merely for a defective specification, if this be one, is a very high penalty, and should not be lightly inflicted unless rendered absolutely necessary by law." (7 Wheat. 448, 20 U.S. 448, 5 L.Ed. 495)

In contemplating this seemingly drastic rule, we bear in mind that there is no natural or common law right to a monopoly of an invention. Robinson Treatise on the Law of Patents (1890) § 24. By Constitutional grant, Article I, § 8, Clause 8, Congress has power to give inventors, for a limited time, "the exclusive right to their respective discoveries." Applicants for such monopolies must comply with the requirements that Congress insists be met as a condition to exercising such monopoly. The seeming harshness of this rule is further ameliorated when we keep in mind that an inventor may gain monopoly for an inventive improvement to an existing device simply by limiting his claim to that which he did invent. In the case before us, this could have been accomplished by a narrowing of Claim 1, or by presentation of a separate claim limited to the spindle type record dropper which, for this opinion, it is assumed presented invention. In Sweden, Holstensson did this. Swedish patent No. 97,122 was taken out on the entire machine, while patent No. 97,123 was limited to the spindle record dropper. The same procedure could have been followed here, but was not.

Evans v. Eaton, which controls this case, does not appear to have been cited or relied upon for the point here involved in any recent decision of the Supreme Court; neither has it been overruled or criticized. It has currency as authority, however, in decisions of District Courts and Courts of Appeals. Guide v. Desperak, 144 F.Supp. 182 (S.D.N.Y. 1956); Jacobs Mfg. Co. v. T. R. Almond Mfg. Co., 177 F. 935, 936 (C.A. 2, 1910); Wheeler v. James, 189 F. 896, 902 (C.A. 2, 1911); National Mach. Corp., Inc. v. Benthall Mach. Co., 241 F. 72, 87 (C.A. 4, 1916); Brooks Co. v. Stoffel Seals Corp., 160 F.Supp. 581, 592 (S.D.N.Y. 1958); Pursche v. Atlas Scraper and Eng'r Co., 300 F.2d 467, 477 (C.A. 9, 1961). We think that while the Bassick, Lincoln Engineering and the A & P cases, discussed above, do not cite Evans v. Eaton, they follow the law it announced. So also do Cold Metal Process Co. v. Republic Steel Corp., 233 F. 2d 828, 834 (C.A. 6, 1956); Graver Tank & Mfg. Co. v. Linde Products Co., 336 U.S. 271, 276, 277, 69 S.Ct. 535, 93 L.Ed. 672, 677.

We are aware that the plaintiff here successfully defended the validity of the patent in suit in the case of Holstensson v. Webcor, Inc., 150 F.Supp. 441 (N.D. Ill.1957). The able opinion of Judge Perry in that case does not, however, disclose that the legal questions upon which our decision turns were raised or considered in that case. No mention is made in the reported opinion of the old Arvidius Reissue Patent. District Judge Perry does not discuss the matter of overclaiming.

We are of the opinion that the Holstensson patent in suit is without validity as a combination patent and is likewise void for overclaiming.

The judgment of the District Court is reversed with direction to enter judgment dismissing the complaint.