**SKI–MATE CORPORATION, Plaintiff,**

v.

**WESTERN AUTO SUPPLY COMPANY, Defendant.**

**Civ. A. No. 14457.**

United States District Court
S. D. Texas,
Houston Division.

June 24, 1965.

William E. Ford, Houston, Tex., for plaintiff.

Tom Arnold, Houston, Tex., John D. Gould, Minneapolis, Minn., for defendant.

NOEL, District Judge.

This case is submitted to the Court upon pleadings, stipulations, answers to requests for admissions and interrogatories, and discovery depositions, plus exhibits and briefs. The Court having considered all of these instruments and exhibits and having heard arguments of counsel, now makes its determination on all matters.

█ Plaintiff is a Texas corporation having its principal place of business at El Campo, Texas. The defendant is a Missouri corporation, having its principal place of business at Kansas City, Missouri. The defendant is a nonresident of this Judicial District; however, it has a regular and established place of business here. This Court has jurisdiction of the cause and the parties.

This is a suit for alleged patent infringement of United States Letters Patent No. 2,866,210, which is predicated upon the sale by defendant in the Southern District of Texas of water skis which have incorporated water-ski bindings manufactured and sold by Ron-Vik, Inc., a Minnesota corporation having its principal place of business in Minneapolis, Minnesota.

Defendant asserts the following defenses:

(1) The claimed subject matter lacks invention over the prior art.

(2) The claimed subject matter lacks (does not have the dignity of) invention.

(3) The claimed subject matter is drawn to an old combination and aggregation (should have been drawn to a water-ski binding and not to the whole water ski).

(4) If the interpretation of the claims in suit should be extended to describing the allegedly infringing structures, such extension would

make the claims vague, indefinite, and unenforceable.

(5) The claimed subject matter is different from the allegedly infringing water skis and, thus, is not infringed.

(6) The file history of the patent sued upon contains assertions made in order to obtain the allowance of the claims in suit, and the assertions estop plaintiff from now urging a broad enough interpretation of the water skis sold by defendant to support infringement.

Patent No. 2,866,210, hereinafter called the Romig patent, does have invention over the prior art. Application for the Romig patent was made on February 21, 1956. The patent issued on December 30, 1958, with five claims, to Richard I. Romig of El Campo, Texas, the applicant and alleged inventor of the "Water Ski with Adjustable Heel," which is the subject of said patent. At the time of issuance of the patent, title resided in a partnership of Mr. Romig and a Mr. Pool, said partnership being denominated Romig-Pool Manufacturing Company, having its principal place of business at El Campo, Texas. By assignment dated October 3, 1960, Richard I. Romig assigned his right, title and interest in and to the patent to the plaintiff; and said Richard I. Romig is President of plaintiff corporation.[1]

The alleged invention of the Romig patent resides in the ski-binding; and the applicant for the patent, Mr. Romig, does not claim any novelty in the ski apart from the binding. No claim of novelty is made to the toe portion of the ski-binding. Prior to the development of the ski-binding and the Romig patent, there was known in the prior art the structure of a ski-binding which comprised a front toe portion and a heel shield or heel portion, wherein the heel shield or heel portion was adjustable toward and away from the front toe portion. It was also old in the prior art to provide a water-ski binding wherein the heel shield is of a resilient material flanged horizontally at its base and connected to a flat supporting plate by a hold-down ring. Prior to the development of the ski-binding of the Romig patent, it was also old in the prior art to have a water-ski binding comprising a fixed toe portion; a heel shield connected to a flat plate; and a pair of laterally spaced, generally parallel guide rails for mounting and guiding the flat supporting plate and the heel shield for adjustment toward and away from the fixed toe portion. Any novelty in the Romig patent has been admitted by plaintiff to reside only in the latching mechanism of the heel-shield portion of the ski-binding.

Claims 1 through 5 of the Romig patent are valid and directed to a water ski, including a base, a toe shield connected thereto, parallel extending guideways affixed to the base and providing inwardly vertically extending, substantially smooth surfaces, a heel shield, hold-down ring and heel-shield support plate rigidly connected together with support plate slideable between guideways, a leaf spring of greater length than the transverse distance between guideways with opposed ends to bear against said guideways' inner surfaces in vertical line contact adjustments of substantially infinitesimal gradients, connection means rigidly connected to at least one of said heel shield, hold-down ring and heel-shield support plate and providing pivot means for said leaf spring disposed centrally between said guideways and forwardly of said spring end line contacts, and handle means to yieldably withdraw said spring ends from said guideways and releasable to return them to adjustable, infinitesimal gradient, guideway contact. The Romig patent is a combination patent, each of the claims incorporating some old elements with the latching

1. The evidence does not reflect whether Mr. Pool also assigned his interest to the plaintiff. However, no motion based on this point has been made by the defendant, although reference to the point was given by it during argument. Therefore, the Court here will do nothing more than also make reference to it.

mechanism which is claimed to be the invention.

The prior art patents cited in the Romig patent are the Hartman patent No. 2,382,149; the Taylor patent No. 2,740,972; the Hains patent No. 2,327,783, and Scholl patent No. 2,000,257 (shoe clerk's gauge).

The Hartman patent showed guideways forwardly in which the heel support could slide, but rearwardly the guideways themselves formed adjustment springs which were urged outwardly to move their latch projections into position to extend into definitely and positively spaced—apart holes in a separate anchor piece upstanding from the base.

The Taylor patent showed a wing-nut which latched a rearward tongue of the heel support to the base by means of positively spaced adjustment bores therein through which extended the post on which the wing-nut was threaded.

The Hains patent showed parallel slots in the heel support, which support was slideable under wing-nuts; and it also showed a screw upstanding through each slot to receive a wing-nut, and that the heel support could be moved in infinitesimal adjustment.

The Scholl patent showed a foot measure and shoe-size indicator with a heel shield or heel piece slideable in parallel slots in a base so that adjustments in infinitesimal gradients could be made. A single coil spring urged a side plate outwardly to latch the shoe-size indicator if manual pressure against the side plate was released.

Thus, the prior art patents of record from the same field showed parallel guideways (Hartman) and adjustment in infinitesimal gradients (Hains), but do not show any releasable spring slideable with the heel support between guideways with ends to bear on flat surface guideways. The Scholl patent, from a different field, had the two features of adjustment in infinitesimal gradients and parallel guideways in the form of slots, but the single release spring was far from being disposed between the slots,

and any thrust against the heel piece would move the heel piece rearwardly.

Therefore, from the patents cited in the Romig patent, it is obvious that the reward to Romig was predicated on his having pioneered the prior-art adaptation of taking the spring of Hartman or of Scholl and changing it to a central position to the rear of the heel shield and pivoting it on the heel-shield support in such a manner that the opposed ends of the spring would bear against flat surface guideways, whereby centered adjustment could be made in infinitesimal gradients.

The defendant states that the only novelty in the Romig patent, the latching mechanism, is a well-known form of latching mechanism used in another field. It is alleged by the defendant to be the same as was shown in United States Patent No. 514,921 issued to J. M. D. France. The France patent is for a latching mechanism in the different field of bill files. It shows an upstanding fixed plate on a horizontally extending base. Round runners extend horizontally from the plate and a slide plate, which is upright and thus parallel to the fixed plate. The slide plate has bores to receive the round runners therethrough. A leaf spring, with width in the vertical and length horizontally, extends across the slide plate. The leaf spring is riveted, centrally of its length, to the slide plate. It is longer in length than the horizontal distance between runners and its ends have half round recesses to fit against the runners. Two horizontally-spaced-apart wing-nuts are fixed to the leaf spring on opposite sides of the rivet, to serve as handles.

The Patent Office did not apply the France patent as prior art against Romig. It could have been omitted on the theory that bill files and water skis are from two unrelated arts and that the use of a bill-file feature in a water ski would not be readily suggested to one skilled in the water-ski art. Also, it may have been omitted on the theory that the structure involved would have to undergo too great a modification to warrant this patent being a pertinent reference; i. e., the runners would have to be altered

to provide vertically extending flat sides and the spring end recesses would have to be filled out.

Another latch in existence prior to the Romig patent is the Amundson window latch. This latch has two opposed, substantially L-shaped, rigid latch members, with short legs adjacent to each other and pivots on which the long legs are pivoted. An individual V-shaped spring is connected and mounted by a clip angle to urge against the long leg of each latch member to hold it in latched position against a vertically extending door-jamb element, relying on the fact that the rigid latch member can bite into the door-jamb wood.

I hold that both the Amundson and France latching mechanisms would not suggest to one skilled in the water-ski art the use of them in water skis without calling into play invention. Furthermore, I hold that the Romig patent is not anticipated by the prior state of art, as reflected by the patents submitted to the Court. I also hold that all five claims in the Romig patent constitute invention.

The defendant asserts that the plaintiff's claims are invalid as directed to an old combination. The patent claims in suit are directed to a water ski, and the claims combine elements including the ski and parts making up the ski-binding. However, as admitted by the plaintiff, any novelty in the Romig patent resides *only* in the latching mechanism of the heel-shield portion of the ski-binding. The defendant asserts the basic combination of elements here involved is old and that the alleged improvement of one element in an old combination does not permit the patentee to re-patent the old combination by reclaiming it with the alleged improved element substituted for the old element. It therefore asserts that the claims are invalid for over-claiming the alleged invention, and that the claims of the patent in suit should have been directed to the alleged invention thereof, i. e., the latching mechanism of the water-ski-binding, rather than to the old combination of elements recited in the claims.

Defendant relies upon Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251 (1936), and other cases developing the principle established therein. Combinations which bring together old elements with the invention are held to be patentable in such cases as Williams Mfg. Co. v. United Shoe Mach. Corp., 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537 (1942), and Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805 (1909). But to be so, it is necessary that the old contribute something more than mere presence, to the functioning, the utility and the novelty claimed to provide patentability for the total combination. See Holstensson v. V–M Corp., 325 F.2d 109 (6th Cir. 1963), cert. den. 377 U.S. 966, 84 S.Ct. 1646, 12 L.Ed.2d 736 (1964), which discusses the Bassick Mfg. Co. case and its progeny. If the old does not contribute something more than presence to the combination, then the claims containing the combination are void for over-claiming.

I do not find that the claims of the Romig patent are void for over-claiming. A patent was granted on these claims; and the allowance of a patent by the Patent Office carries with it the presumption of validity. 35 U.S.C.A. § 282. I find that the old elements do contribute something more than mere presence in the combination. This finding is substantiated by the fact that at the time of the issuance of the Romig patent, December 30, 1958, water skis and water-ski-bindings were still in the same sub-class as far as the Patent Office was concerned, Sub-class 9–21. Only subsequently, after the issuance of the Romig patent, was a sub-class established for water-ski-bindings.

The Court now reaches the issue of infringement. It has been admitted by the plaintiff that the claims of the Romig patent do not strictly read upon the alleged infringing structure of the defendant. But infringement may exist by virtue of the fact that the defendant's water skis are the full mechanical equivalent of the combination asserted in the plaintiff's claims. In other words, by

use of the "doctrine of equivalents," infringement may have occurred.

Insofar as there is similarity between the ski-bindings of the Romig patent and the defendant patent wherein such bindings comprised a fixed toe portion and an adjustable heel shield moveable toward and away from the fixed toe portion, the two bindings are similar to the prior art. The difference between the Romig patent and the defendant patent insofar as the latching mechanism is concerned is as follows. The defendant's binding has plastic guiderails with notches therein; these notches form the steps of adjustment, and they are about 1/10 of an inch in pitch. The Romig patent has smooth guiderails providing for infinitesimal adjustment rather than step-by-step adjustment in finite amount as the defendant's patent provides. The Romig patent calls for a substantially V-shaped leaf spring with apex connected centrally to the heel shield hold-down ring, with the leaf spring being longer than the transverse distance between guideways, and with the spring ends to bear forcibly against the smooth, inner vertical surfaces of the guideways to position the heel shield against the heel of the skier in infinitesimal gradients of adjustment.

The defendant's spring is of greater length than the transverse distance between the serrated guideways, and it is not connected at its apex to the support plate transversely centrally of the support plate; but rather it is connected through two plastic triggers, which triggers are on opposed sides of the longitudinal center line of the water ski and which are attached to the support plate by rivets which extend through oblong slots in the triggers. The leaf spring pivots about the rivets and arches centrally thereinbetween when the triggers are grasped to contract the leaf-spring ends out of respective adjustment notches in the guideways. The spring is freely moveable but between the limits defined by the movement of the rivets in the holes of the triggers. This limited movement of the spring is sufficient to engage or disengage the ends of the spring from the notches of the guiderails. The ends of the spring in the defendant's binding do not bear as forceably against the guiderails as do plaintiff's but because of the limited movement of the defendant's spring, merely bottom with slight force in the notches of the guiderail.

The defendant also asserts further differences to be that its leaf spring is curved, not V-shaped, that the ends of its spring are rounded to better fit into the notches, and that the notches are used and spring-end force lessened because the plastic guiderails cannot be hardened to withstand the side thrust of the springs. The side thrust is lessened because the triggers connected to their spring ends on each side of the longitudinal center line of the water ski have "oblong slots" therein permitting the rivet upstanding through an "oblong slot" in each case to act as a stop by being contacted with the side of the slot in each case, just as the spring end bottoms in any selected tooth.

I hold that although the defendant's binding may accomplish the same result as plaintiff's, it does not appear to carry out the same functions, and it certainly does not operate in the same manner. Therefore, the defendant's binding on the accused skis does not infringe plaintiff's patent. The defendant also asserts that plaintiff's interpretation of its patent claims, to cover the defendant's allegedly infringing device, would make the claims invalid as being indefinite. I agree with the defendant and thus hold that the "doctrine of equivalents" cannot be used to stretch the plaintiff's claims to the point of finding infringement.

That there is no infringement is apparent for yet another reason which is reflected in the file history of the Romig patent. The Romig claims were initially rejected by the examiner on among other grounds that of failing to patentably define invention over the Hartman patent. In response to this rejection, and in argument for allowance of the claims, the applicant distinguished his patent over Hartman, which was a step-by-step ad-

justment, on the basis that in the structure of Romig the free ends of the leaf spring can be brought to bear against the upstanding bearing surfaces of his trackways in infinitesimal gradients of position at any point along such trackways. On the basis of this distinction, as well as others, the patent was granted. This distinction emphasized by Romig in his application for patent likewise distinguishes defendant's structure from the Romig patent, because the defendant's patent is not moveable in infinitesimal gradients. Therefore, infringement should be denied because of file-wrapper estoppel.

■ 35 U.S.C.A. § 285 provides that the Court in exceptional cases may award attorneys' fees which are reasonable to the prevailing party. Defendant submits that this is a case in which they should be awarded, since it alleges the suit was predicated completely upon an unrealistic and unsupportable interpretation of the claims in suit. On this point I disagree with defendant, and attorneys' fees will not be fixed against the plaintiff.

The defendant will prepare an appropriate final decree.