Anthony GUIDE, Plaintiff-Appellant,

v.

Sam DESPERAK and Joseph Roschko, individually and as co-partners doing business under the firm name and style of Advance Sewing Machine Company, Defendants-Appellees.

Anthony GUIDE, Plaintiff-Appellant,

v.

ADVANCE SPIRAL MACHINE COMPANY, Inc., Defendant-Appellee.

Nos. 269, 270, Dockets 24378, 24379.

United States Court of Appeals Second Circuit.

Argued March 13–14, 1957

Decided Oct. 22, 1957.

Darby & Darby, New York City (Harvey W. Mortimer, New York City, and Harry W. F. Glemser and Bacon & Thomas, Washington, D. C., of counsel, on the brief), for plaintiff-appellant.

Samuel J. Stoll, Jamaica, N. Y., for defendants-appellees.

Before, HINCKS, STEWART and LUMBARD, Circuit Judges.

PER CURIAM.

Appellant is the owner of patent No. 2,674,963. He brought these two actions; one for patent infringement, and the other for unfair competition. Defendants counterclaimed for a judgment declaring the patent invalid. Both causes were tried together and Judge Dawson, in an opinion reported at 1956, 144 F. Supp. 182, held that the patent was invalid because of the failure of the patentee to describe his claims with sufficient particularity as required by § 112 of the Patent Code, 35 U.S.C.A. § 112.[1] The action for unfair competition was dismissed for lack of supporting evidence and the propriety of that disposition is not challenged on this appeal.

The patent in issue covers a device for spirally stitching preformed hemispherical cups for brassieres. The cup is placed on a pin and a tubular work holder shaped like an inverted U, engages the pin in such a manner as to allow the cup to rotate freely. A sewing machine then stitches the cup and as it is being sewn, the center of the cup is gradually moved away by the attachment from the sewing needle at a predetermined rate proportional to the speed of the stitching and feeding mechanism of the sewing machine, so that the spaces between stitching convolutions remain equal, despite the fact that every convolution is longer than its predecessor.

Spiral stitching had been accomplished previously only on flat pieces of material. Thus in the Gensheimer patent (No. 2,551,261, May 1, 1951) a piece of material, held flat was sewn with a spiral stitch, then a pie shaped segment was cut from the material and it was resewn so that a cone or brassiere cup was formed. The similarities and differences between the Gensheimer device and the Guide patent will be discussed more fully when we take up the question of the patentability of Guide's machine. Some other machines for spiral stitching and their uses are noted in the margin.[2]

Every claim in suit, viz., 1, 2, 3, 6, 7, 12, and 14, as the appellant points out in his brief on appeal, includes in its stated combination an element described as a "U-shaped holder member" (claim 14),[3] or as "a work support constructed and arranged pivotally to support a hemispherical workpiece" (claim 12), or as "means * * * for pivotally support-

---

[1] "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

[2] No. 1,259,324 Weiss March 12, 1918 Hat brims
2,437,624 Sutker March 9, 1948 Hat brims
1,463,116 English July 24, 1923 Cap brims

[3] Claim 14 reads in part: "The combination with a sewing machine having stitching mechanism including a needle, a presser foot and work feeder and driving means therefor, of means for guiding the work laterally relative to the direction of the forward feed produced by the stitching mechanism at a progressively varying rate, comprising a laterally shiftable work support member; *means carried by said work support member including a gen-* erally U shaped holder member; a work-piercing needle mounted upon one of said members for pivotally supporting a work piece for free rotation relative to said members, said holder member having a portion of one of its legs adjacent the work supporting member substantially in alignment with said needle and cooperating with said work supporting member for maintaining a work piece in place; * * *". (Emphasis added.)

ing the work" upon a laterally shiftable work support (claim 1). As the trial judge observed " \* \* \* the only invention, if it be an invention, made by the plaintiff was the addition of [this variously described] U-shaped holder" to the claimed combinations. 144 F.Supp. at page 187.

On the basis that the new element embodied in the patent was the U shaped holder, the District Court held that the patent was void under § 112 of the Patent Code, for failure to specifically state the invention. We think that this holding was in error.

If all the patentee had claimed was his utilization of the U shaped work holder, the case would fall within the rule of General Electric Co. v. Wabash Appliance Corp., 1938, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402, in that the patent did not meet the requirement of " \* \* \* precise descriptions of the new characteristic for which [the patent] protection is sought." 304 U.S. at page 369, 58 S.Ct. at page 902.

■ But the patent did not merely cover the U shaped work holder. The patent claimed the combination. True, all of the elements of the combination, save the work holder, were old to the art. It was the combination itself which was novel, and even where none of the elements is new, the rule is well settled that a unique combination of old ideas may be patentable. Williams Manufacturing Co. v. United Shoe Machinery Corp., 1942, 316 U.S. 364, 62 S.Ct. 1179, 86 L. Ed. 1537; Leeds & Catlin Co. v. Victor Talking Machine Co., 1908, 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805. The distinction between combination patents and those relating to a single element is aptly set out in Parks v. Booth, 1880, 102 U.S. 96, at page 102, 26 L.Ed. 54: "[Some] inventions embrace only one or more parts of a machine, and in such cases the part or parts claimed must be specified and pointed out, so that constructors, other inventors, and the public may know what the invention is and what is withdrawn from general use \* \* \*. Modern inventions very often consist merely of a new combination of old elements or devices, where nothing is or can be claimed except the new combination. Such a combination is sufficiently described, to constitute a compliance with the letter and spirit of the act of Congress, if the devices of which it is composed are specifically named, their mode of operation given, and the new and useful result to be accomplished is pointed out, so that those skilled in the art and the public may know the extent and nature of the claim and what the parts are which cooperate to do the work claimed for the invention."

■ The appellant, therefore, has complied with the requirements of § 112 of the patent statute, since the claims in issue specify the elements and the mode of operation of appellant's combination. Moreover, the specification points out the new and useful result appellant claims to have accomplished as follows: "In its more specific aspects the invention is concerned with the stitching of generally hemispherically constructed forms of work, for example, brassiere elements."

■■ The judge below expressed concern "that the patent, because of its very breadth could become a weapon to deter other persons, on threat of infringement actions, from building or using machines [not embodying appellant's improvement]." But "\* \* \* [I]t has never been thought that a claim limited to an improvement in some element of the machine is, by such reference [to the machine], rendered bad as claiming a monopoly of [the various parts of the machine]." Williams Manufacturing Co. v. United Shoe Machinery Corp., supra, 316 U.S. at page 369, 62 S.Ct. at page 1182. Infringement of a combination patent occurs only through a combination comprising every one of its elements or a mechanical equivalent. Rowell v. Lindsay, 1885, 113 U.S. 97, 5 S.Ct. 507, 28 L. Ed. 906.

■ Thus, we hold that the claims in the appellant's patent did meet the requirements of § 112 of the Patent Code, and we come now to the question of whether the combination in question con-

stitutes invention. Although the District Court did not pass specifically on that issue, both parties presented it fully in the court below and on this appeal and we therefore proceed to that question.

Section 103 of 35 U.S.C.A. sets forth the general requirement of inventions: "A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains * * * "

As we have noted before, spiral stitching had been known to the art before Guide's machine was introduced. In 1951 Gensheimer had patented a machine for spirally stitching brassiere elements, substantially similar to the one for which the patent was granted to Guide in 1954, the only difference being that in using the Gensheimer device the work was stitched flat and then formed into cones, while Guide's device stitched the preformed cones. Under either method a segment had to be cut out of the material in order to form the cup. Thus Guide merely reversed the steps required in the manufacture of the brassiere elements in that he formed the cup prior to its introduction into the machine, while under the process used with the Gensheimer machine the cup was formed after it had been spirally stitched.

 The difference between the two machines, therefore, was only the height of the periphery of the work holder; in Gensheimer the work holder was flat, in Guide it was U shaped. If a preformed cup were stitched on the Gensheimer machine the edge would be crushed down by the work holder; it was to prevent this that the U shaped holder was substituted in the combination by Guide. The substitution of the U shaped holder for a flat holder was a necessary and obvious step to anyone skilled in the art, and cannot be classed as invention. See Welsh Manufacturing Co. v. Sunware Products Co., 2 Cir., 1956, 236 F.2d 225.

We think it should be made clear that we disassociate ourselves from Judge Dawson's observations at pages 186 and 187 of 144 F.Supp. with regard to the operations of the Patent Office. The problems of that office in processing patents on an *ex parte* basis with a limited staff of searchers and examiners and with present facilities are difficulties which may not fairly be appraised by judges passing on single cases. Nor are statistical results in cases where the validity of patents is passed upon by the federal courts an equitable measure of efficiency. Necessarily those patents whose issuance is subject to doubt will be more frequently questioned in litigation.

The calibre of executive performance is more properly the concern of the Congress which is able to obtain the necessary information pertinent to the determination of whether an executive agency is sufficiently staffed so as to enable it effectively to discharge its duties. For these reasons it seems to us that comment concerning the Patent Office is inappropriate.

Since the patent in suit is invalid for lack of invention, the decision of the District Court is affirmed.