**JAMESBURY CORPORATION,**
**Appellant,**

v.

**LITTON INDUSTRIAL PRODUCTS,**
**INC., Appellee.**

**No. 6, Docket 78–7004.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 11, 1978.

Decided Oct. 23, 1978.

Arthur I. Neustadt, Arlington, Va. (Robert C. Miller and Oblon, Fisher, Spivak, McClelland & Maier, Arlington, Va., and J. Read Murphy and Murtha, Cullina, Richter & Pinney, Hartford, Conn., of counsel), for appellant.

John A. Diaz, New York City (J. Robert Dailey and Morgan, Finnegan, Pine, Foley & Lee, New York City, and Thomas F. Parker and Gross, Hyde & Williams, Hartford, Conn., of counsel), for appellee.

Before OAKES, GURFEIN and MESKILL, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal from a summary judgment in favor of an alleged *direct* infringer in a patent infringement case. The issue on appeal is whether summary judgment was properly granted against the patentee on the ground that claims 7 and 8 of appellant's Patent No. 2,945,666, entitled "Ball Valve", are invalid for overclaiming. Having found the patent invalid for overclaim-ing, the District Court did not reach the question of novelty or obviousness, nor the question of whether there has been an infringement.[1]

The District Court of Connecticut (Hon. M. Joseph Blumenfeld, Judge) held the claims invalid on the authority of *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938), which we discuss below. We are called upon to interpret the test for patent overclaiming established by this precedent of a generation ago, and to determine its applicability to the facts of the present case.

The patent claims involved in this case disclose a ball valve, comprised of a valve chamber, a ball, and a seat or seal.[2] The basic mechanism has been in use for at least fifty years,[3] though it has been found that "[p]rior to the development of the plaintiff's patented valve, ball valves were not generally accepted or used by industry". *Jamesbury Corp. v. United States*, 518 F.2d 1384, 1386, 207 Ct.Cl. 516 (1975). It is designed to control the flow of fluid in both directions through pipelines. The chamber has both an inlet and an outlet opening. The ball, which is mounted for rotation, has a passage bored through it. When the ball is rotated to an "open" position, the passage is aligned with the chamber openings so as to permit flow. When rotated to a "closed" position, the passage is at a right angle to the chamber openings, and the surface of the ball operates to cut off flow. The seal or seat has two purposes. It holds the ball in place and it seals the junction between

1. The District Court granted summary judgment as a matter of law. The defendant moved for summary judgment on the basis that the patent is invalid on its face. It submitted no affidavit or other evidence in support of the motion.

2. The claims in issue read:

> 7. A ball valve comprising: a casing adapted to be connected to a pipe line and having a valve chamber and inlet and outlet openings; a ball mounted in said chamber and having a port; and a sealing ring mounted in said chamber around one of said openings, said ring having a lip projecting inward toward the axis of the ring and engaging the ball, said lip being free to bend in the axial direction of the ring and increasing in thickness outward in the radial direction of the ring, and said ball being rotatable between an open position in which said port is in register with the opening surrounded by said ring and a closed position.
>
> 8. A ball valve as described in claim 7, said lip having side faces disposed one toward the ball and one away from the ball, and said faces diverging from each other substantially uniformly outward in the radial direction of the ring.

3. Defendant-Appellee's Brief, at 3.

ball and chamber to prevent leakage. Two such seals are often employed, one on either side of the ball.[4]

As the preamble to appellant's patent indicates,[5] the claimed novelty of its invention lies primarily in the seal. The patent is addressed to the "especially difficult sealing problem" occasioned by use of ball valves for handling corrosive or radioactive materials and fluids at high temperature in various industrial settings. The essence of this problem is that "[i]t is essential to form a perfectly tight seal between the ball and the seat, usually on both the upstream and downstream side," while at the same time permitting the valve to "open and close easily." The preamble states that the principal object of the invention is "to produce a valve seat construction which provides maximum security against leakage, which reduces wear on the seats to a minimum, and which ensures smooth opening and closing of the valves." To achieve this purpose, the ball and valve "may be of generally conventional construction." They are to be used,

however, in combination with the new sealing element. The seal, which is given a more technical description in claims 7 and 8, has a lip which remains in constant contact with the ball, which may flex to permit rotation and reduce wear, but which is so constructed and placed that it remains tight against the surface of the ball at all times.

The District Court did not reach the question whether the sealing element, considered in isolation, had enough novelty to be patentable. Instead, it addressed itself to the question whether by claiming patentability for the valve, ball and seal, in combination, the plaintiff had overclaimed and hence forfeited its claim to patentability.

The same patent was in suit in *Jamesbury Corp. v. United States, supra.*[6] The Court of Claims adopted the trial opinions of then Commissioner Lane and Trial Judge Colaianni. The first of these opinions held that Jamesbury's ball valve, with its new seal, "solved the problems of temperature variation, pressure variation, and valve

4. A somewhat more detailed description of ball valves may be found in *Jamesbury Corp. v. United States, supra,* 518 F.2d at 1386.

5. H.G. Freeman et al. Patent No. 2,945,666, Ball Valve (June 19, 1960), *reprinted in* Appendix at 12. The preamble, portions of which are quoted in text, reads in full:

This invention relates to ball valves, and more particularly to sealing elements for the valve seat, the present application being a continuation-in-part of copending application Serial No. 436,188, filed June 11, 1954, now abandoned. Ball valves for handling corrosive or radioactive materials and fluids at high temperature, present an especially difficult sealing problem. It is essential to form a perfectly tight seal between the ball and seat, usually on both the upstream and the downstream side, and yet the valve must open and close easily. Furthermore, if the valves are installed in dangerous or inaccessible locations, shutting down the equipment for repairs on a valve or replacement of a valve seat may be extremely costly. The valve seats must, therefore, be constructed to withstand long wear without leaking.

The principal object of this invention is to produce a valve seat construction which provides maximum security against leakage, which reduces wear on the seats to a minimum, and which ensures smooth opening and closing of the valves. Another object is to provide a seat construction with [sic] is

adapted not only for seats made of the flexible rubber-like materials ordinarily used, but also for seats made of hard plastics or even metals, where extreme temperature or load conditions preclude the use of rubber-like materials.

The valve here disclosed includes a ball, a valve casing, a stem for controlling the ball, and a bonnet, all of which may be of generally conventional construction. Preferably a pair of sealing rings, one on the upstream side and one on the downstream side of the ball, are employed as the sealing elements. These rings have lips which are free to deflect to a greater or less extent, depending on the seat material and the load conditions, and which are shaped and proportioned in such a manner as to engage the ball at an angle with respect to the direction of the flow. Furthermore, both the port of the ball and the lips have rounded rims disposed in a specific relationship, as will be later described in detail so that the edge of the port cannot cut into the lip when the valve is being opened or closed. Other advantages and novel features of the valve will be apparent from the description which follows.

6. The case found its way to the Court of Claims because the United States was a defendant. The patentee contended that valves used in Navy submarines infringed its patent.

wear" which had been inherent in prior art. *Id.*, 518 F.2d at 1387. Solution of these problems was made possible by employment of "a novel sealing ring utilizing a principle different from . . . compression sealing rings" known to prior art. *Id.* The importance of the innovation was emphasized by reference to the Jamesbury valve's striking commercial success. *Id.*[7] The second opinion by Judge Colaianni upheld the patent against a claim of anticipation by prior art patents. *Id.* at 1398–99.

In rendering summary judgment for appellees, Judge Blumenfeld does not appear to have taken issue with the novelty of the sealing ring itself.[8] Instead, perceiving that claims 7 and 8 distinctly extend to the ball and valve casing as well as the seal, he treated the patent as an attempt to claim a combination of elements: a ball, a valve, and—by virtue of improvement in a single element of the ball valve—a sealing ring. *Cf. Lincoln Engineering Co. v. Stewart-Warner Corp., supra; Bassick Mfg. Co. v. R.M. Hollingshead Co.*, 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251 (1936); *Holstensson v. V–M Corp.*, 325 F.2d 109 (6th Cir. 1963), *cert. denied*, 377 U.S. 966, 84 S.Ct. 1646, 12 L.Ed.2d 736 (1964).

The District Court applied the test for combination patents advanced by *Lincoln Engineering, supra*, 303 U.S. at 549, 58 S.Ct. 662, which purportedly requires disclosure of a "new function". The District Court found that no new function was disclosed:

> There is nothing to indicate that a ball valve incorporating the new seal performs any "additional or different function" than other ball valves. It does not function in a new manner. It may be more efficient or durable, but it does what ball valves have always done. *Cf. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). Even the use of a seat/seal in a ball valve was not new. . . . The patentee may have invented a seat and seal suit-

able for use in a ball valve, but there is not the slightest doubt that the plaintiff did not invent a ball valve.

442 F.Supp. at 267–68. The court thus rejected appellant's contention that patentability can be based on an "improved result," as well as the contention that this combination performs a novel *sealing* function. Although the Judge intimated that the sealing ring itself might have been patentable, he found the claim for the combination, with the conventional elements added, to be fatally overbroad. On this view of the case, the court held, quite properly, that if the claims were, indeed, overbroad, resort could not be had to the specifications in an attempt to limit the patent to its single novel element. *See Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 336 U.S. 271, 277, 69 S.Ct. 535, 93 L.Ed. 672 (1949); *cf. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 149, 71 S.Ct. 127, 95 L.Ed. 162 (1950). Claims 7 and 8 were therefore declared invalid in their *entirety*. The court thus found the patent invalid for overclaiming. The District Court excluded from consideration the earlier decision of the Court of Claims upholding the validity of the same patent, because it believed that the issue of overclaiming had not been presented to the Court of Claims.

Subsequent events indicate that the District Court may have been unwittingly in error when it made that assumption. A memorandum of the Court of Claims in *Jamesbury v. United States, supra*, Nos. 189–63; 520–71 (June 2, 1978) after Judge Blumenfeld's decision, states that the issue of overclaiming *was* raised in that case and was rejected, without discussion. Because the present case involves a different defendant and is before a different court, the earlier decision on the issue of overclaiming is neither "law of the case" nor binding precedent in this circuit. Nonetheless, we think that the contrary decision of the

---

7. The court also noted that "[p]rior to the development of the plaintiff's patented valve, ball valves were not generally accepted or used by industry." *Id.* at 1386.

8. The opinion below is reported at 442 F.Supp. 266.

Court of Claims should give us pause in considering the propriety of a summary judgment in favor of the opponent of the same patent.[9]

▄ The issue in this case is a narrow one. We do not believe that it concerns an attempt to patent a combination, *all* the elements of which are old. *See Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra*, 340 U.S. at 151–53, 71 S.Ct. 127. *See also Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 59, 90 S.Ct. 305, 307, 24 L.Ed.2d 258 (1969) ("Each of the elements combined in the patent was known in the prior art."). Nor does it involve a patent where the interrelationship of the elements is a matter of convenience rather than necessity, and where each element could adequately perform its designed function in isolation. *See Anderson's Black Rock, Inc. v. Pavement Salvage Co., supra*, 396 U.S. at 60, 90 S.Ct. 305. Instead, we have a combination with one element, the seal, which is distinctly novel but which is "capable of serving no useful function alone." *Rosen v. Lawson-Hemphill, Inc.*, 549 F.2d 205, 209, n.2 (1st Cir. 1976). As a matter of utility, the novelty lies in the very combination of valve, ball and sealing ring.

If we were to apply the premise of the District Court, its reasoning would be unassailable. We think, however, that the District Court adopted an unduly restrictive test for the patentability of a combination of this type. Starting with what we think to be the proper standard, we find the disclosures of claims 7 and 8 to be well within the zone of patentability.[10] We therefore reverse the summary judgment and remand for trial or other disposition.

The overclaiming defense advanced by the appellee rests almost exclusively on a purported analogy between appellant's patent and the patent invalidated by the Supreme Court in *Lincoln Engineering Co. v. Stewart-Warner Corp., supra.* That case involved a suit for *contributory* infringement against a *supplier* of an *old* element which was included in the claim of the alleged combination patent. The patent claimed a combination of a grease gun, hose, coupler and fitting of the type commonly used for packing wheel bearings. All the elements, as well as their use in combination, were known to the art. The only novelty stemmed from improvements in the "chuck" or coupler that utilized fluid pressure to "cock" the jaws of the coupler after each operation. The basic structure of even the "chuck" remained conventional, however. The Supreme Court held that the minor improvement in the coupler did not justify a claim embracing the entire mechanism. "[T]he improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function *in* the combination." 303 U.S. at 549–50, 58 S.Ct. at 664–65 (footnote omitted; emphasis added).

Concededly, there is a surface analogy between *Lincoln Engineering* and the present case. As the Judge recognized, the basic combination of the ball, valve, and seal is well-known.. And it is true also that the appellant's patent does claim the entire combination on the basis of its development of only an improved sealing ring. But these surface similarities do not, in our opinion, warrant a rigid application of *Lincoln Engineering's* "new function" test.

---

9. Incidentally, if we were to affirm the District Court, appellant presumably would be estopped from suing any other infringer under *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), even though there would then be one decision in favor of the validity of the patent and one decision against—a tie score. *See Blumcraft of Pittsburgh v. Kawneer Co.*, 482 F.2d 542 (5th Cir.

1973). We need not confront this anomaly at this time, however, since we are constrained to reverse the summary judgment.

10. 35 U.S.C. § 101 provides in part:

Whoever invents or discovers . . . any new and useful improvement [of "process, machine, manufacture, or composition of matter"] may obtain a patent therefor . . . .

Analogy between that case and this one breaks down because here, instead of a minor improvement, we have a major innovation in the ball valve art, and particularly because there is no utility in the innovation except as part of the combination.

■ The Court in *Lincoln Engineering* did not elaborate on its definition of a "new function". Nor do we read the phrase as a formula, susceptible of categorical application. In *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra,* 340 U.S. at 150, 71 S.Ct. 127, the Court noted that it "never has ventured to give a precise and comprehensive definition of the test to be applied" to combination patents. One must probe beyond any single case, and regard each case in the light of the particular claims of patentability.

■ *Lincoln Engineering* in particular must be read together with the Court's treatment of the same issue in *Williams Mfg. Co. v. United Shoe Machinery Corp.,* 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537 (1942). In an opinion for the Court, Justice Roberts, who had also written *Lincoln Engineering,* upheld combination patents for improvements in heel lasting machines. The improvements enabled automatic "wiping" and "tacking" functions, which had been disclosed by prior patents, to be performed by the same machine for shoes in a wide range of sizes. The Court affirmed the determination of the courts below "that each combination exhibits invention in that its elements coöperate in a new and useful way to accomplish *an improved result*" *id.* at 368, 62 S.Ct. at 1181 (emphasis added). Justice Roberts distinguished *Lincoln Engineering* on two grounds. First, it had involved a suit against an alleged contributory infringer who had merely supplied one of the conventional, *unimproved* elements. *Id.* at 370, 62 S.Ct. 1179. Second, the patent in *Lincoln Engineering* had claimed an entire device, while in *Williams* "[t]he present suit for infringement is not for the use of an automatic bed lasting and tacking machine as such," *id.*; instead "each of the claims is confined to a combination of specified means applicable only to a restricted por-

tion and function of the whole machine," *id.* at 368, 62 S.Ct. at 1182. *Williams* holds that, where an invention achieves a marked improvement in the art, the test for patentability permits consideration of the improved results as a factor. The invention was patentable, even though the combination of elements did not involve a different operation or cause the machine to serve a different purpose. The lasting machine still wiped and tacked as before. But the patented combination did achieve a new result—use of the same machine for a wide variety of shoe sizes. It thereby significantly enhanced the usefulness of the automatic heel lasting device, and solved an important problem for the shoe manufacturing industry. All the elements claimed in the patent cooperated to accomplish the result. Hence, the combination was patentable.

Authority in this and other circuits lends strong support to that interpretation as the prevailing standard. In *Guide v. Desperak,* 249 F.2d 145 (2d Cir. 1957), this court held that a combination claim may be patentable if it discloses a " 'new and useful result.' " *Id.* at 147, *quoting Parks v. Booth,* 102 U.S. 96, 102, 26 L.Ed. 54 (1880). *Guide* involved a device for spirally stitching pre-formed hemispherical cups for brassieres. The claimed combination contained a single new element, a U-shaped work holder. The patent was ultimately rejected on grounds of obviousness, but the court found no defect in the inclusion of conventional elements in the patent claim, because the combination achieved the useful result of allowing the cups to be pre-formed prior to stitching.

To the same effect are the decisions of the First Circuit in *Rosen v. Lawson-Hemphill, Inc., supra,* and of the Seventh Circuit in *Reese v. Elkhart Welding & Boiler Works, Inc.,* 447 F.2d 517 (7th Cir. 1971). *Rosen* involved a combination claim for a device designed to supply thread at low and constant tension for pattern knitting mills, in answer to a problem that had long plagued the industry. A defense of overclaiming was raised by the defendant in an infringement action, on the ground that the

patent claimed an entire yarn storing device, whereas the single novel element was a tension retarding ring. Chief Judge Pettine rejected the defense, because the ring "has no utility standing alone" and "as part of the combination . . . it cooperates in such a way . . . as to improve the operation of the combination thus producing a new and unusually beneficial result which was not previously obtained nor was it obvious." 399 F.Supp. 532, 538–39 (D.R.I. 1975). Although old elements were employed, there was a "marked improvement over prior art" sufficient to warrant patentability. Id. at 539. The Court of Appeals summarily affirmed Judge Pettine's analysis. 549 F.2d at 208–09 & n.2.[11]

The Reese case involved a patent for improvements in auto-trailer hitches. The court stated as the applicable rule of law "that a novel combination of elements, whether all new, or all old, or partly old, which so cooperate as to produce a new and useful result or substantial increase in efficiency is patentable." Reese v. Elkhart Welding & Boiler Works, Inc., supra, 447 F.2d at 523. The court found a new result in the hitch's increased resistance to sway during hauling, which solved a major problem encountered by hitches in the prior art. See also Pursche v. Atlas Scraper & Engineering Co., 300 F.2d 467 (9th Cir. 1961), cert. denied, 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed.2d 170 (1962) (more efficient plow).

▪ These cases point the way. A combination claim containing elements old in the art may be patented, not only when it discloses a "new function" within the meaning of Lincoln Engineering, supra, but also when, by cooperation of the elements

claimed, it discloses a new result that represents a marked improvement over prior art.[12]

The District Court thought that Holstensson v. V–M Corp., supra, looked the other way and supported its conclusion that the plaintiff had overclaimed.[13] We do not agree. Holstensson involved a patent that claimed both a phonograph spindle and a cycling device, which in combination permitted several records to be played automatically in series. The cycling element was entirely old in the art, having been disclosed by a prior patent of the same inventors.[14] The spindle mechanism, though preceded by prior art spindles accomplishing similar functions, embodied improvements in design that permitted activation by a lever placed beneath the phonograph turntable. Although the patent specifications indicated that the invention was addressed to the problem of playing records of various sizes in series, and several other patent claims were directed to this purpose, the court held that the single claim in issue did not disclose such a function, and it specifically excluded arguments based on that function in assessing the validity of the combination claim. Id., 325 F.2d at 113, 121. The only novelty thus consisted in improvements in the operation of the spindle itself. The court held that to be patentable as part of the combination, the old elements must "contribute something more than mere presence, to the functioning, the utility and the novelty claimed to provide patentability for the total combination." Id. at 120. By this standard, the patent was invalid, because the invention "resided only in the spindle device" and the cycling

11. There is no evidence in Rosen, as appellant suggests, that the court relied on a Jepson type of claiming, Ex parte Jepson, 1917 C.D. 62, 248 O.G. 526, where the conventional elements are set forth in the preamble and the novel element is set forth in the body of the claim. See Application of Simmons, 312 F.2d 821, 50 C.C. P.A. 990 (1963).

12. The rule stated in text also draws support from scholarly authority. See 1 Robinson on Patents, §§ 154, 155, 156.

13. The District Court also relied on Trico Prods. Corp. v. Roberk Co., 490 F.2d 1280 (2d Cir. 1973), cert. denied, 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974), a case also decided at the district level by Judge Blumenfeld. We note, however, that the decision was affirmed on appeal only on the ground of obviousness. Id. at 1281.

14. Moreover, unlike the present case, the conventional character of the cycling element was not identified by the specifications. Id. 325 F.2d at 113.

mechanism "contributed no more to the operation of the claimed combination than the electric motor which provided the power for rotating the turntable." *Id.*

In our view, the decisive factor in *Holstensson* is the court's initial premise concerning the disclosure of the claim. Once the novel function of playing various-sized records was excluded for purposes of testing the validity of the claim, it was clear that the elements in the combination did not *cooperate* to produce the only new result, the improved operation of the spindle. The spindle could perform its operation alone, whether the cycling mechanism was present or not. In the court's view, the cycling mechanism added nothing more than presence to the achievement of the intended result.

■ Moreover, we think that the addition of the elements of ball and valve to the novel sealing ring narrowed rather than broadened the claims. The aphorism that "in a patent claim, more means less" is true here. Jamesbury is not attempting to prevent others from using *any* ball valve but is attempting to prevent others from using only a ball valve with a sealing ring like theirs. *See Williams Mfg. Co. v. United Shoe Machinery Corp., supra,* 316 U.S. at 368–69, 62 S.Ct. 1179; *see also International Latex Corp. v. Warner Brothers Co.,* 276 F.2d 557, 562 (2d Cir.), *cert. denied,* 364 U.S. 816, 81 S.Ct. 47, 5 L.Ed.2d 47 (1960). A claim for direct infringement would lie *only* against one who infringes a ball valve containing the specified sealing ring. *Guide v. Desperak, supra,* 249 F.2d at 147.

Of course, that limitation might not apply to a *contributory* infringer, who manufactured a conventional valve or ball which the direct infringer then combined with an infringing sealing ring to make an entire infringing device. If such a contributory infringer were to be held liable, there would be an argument on policy that the claim was unfairly overbroad. We are not dealing here with such a contributory infringer,

and older cases, including *Lincoln Engineering, supra,* in which *contributory* infringers were suppliers of conventional elements, must be read with that distinction in mind. When one juxtaposes *Williams, supra,* a direct infringement case, with *Lincoln Engineering,* one gets the impression that the nature of the claimed infringement, though not the sole basis for decision, substantially affected the result. We need not go so far as the Patent and Trademark Office Board of Appeals has gone in ruling that, since it is now a defense to contributory infringement that a product is capable of substantial non-infringing use, 35 U.S.C. § 271(c), statutory amendments may have deprived *Lincoln Engineering* of force on its own ground. *Ex parte Barber,* 187 U.S.P.Q. (BNA) 244 (1974). We find it unnecessary to determine whether we agree with the suggestion in that opinion that *Lincoln Engineering* has been legislatively overruled, but we do find that subsequent history militates against an expansive application of the Court's reasoning in *Lincoln Engineering.*

■ Since we reject overclaiming as a self-evident defense, we must reverse the summary judgment. We will not, however, order a grant of summary judgment in favor of Jamesbury. The factual question remains whether the patent accomplishes a new result which is achieved by the elements working in cooperation—the prevention of leakage caused by temperature variation, pressure variation or valve wear. Appellant has submitted an affidavit of its president dealing with the question. Appellee may have some factual evidence in contradiction. While we remand for trial, we are not ruling out a partial summary judgment on validity in favor of appellant, if no question emerges on the issues of novelty or obviousness. The infringement question, if contested, is reserved for trial or other disposition.[15]

Reversed and remanded.

15. We note that the patent in suit has apparently expired, but the issue of damages for past infringement remains, in any event. We express no opinion on the proper measure of damages if the District Court reaches the issue.